---

(No. 11058.—Reversed and remanded.)
DELA HETTICK, Appellee, *vs.* JAMES B. SEARCY, Admr. *et al.* Appellants.

*Opinion filed April 19, 1917.*

1. WILLS—*what does not show an insane delusion.* The fact that a father and mother make a joint and several will for the purpose of preventing their daughter's husband, from whom she had parted, from inheriting any of their property in case she should subsequently become reconciled to him, does not show an insane delusion, even though they were very much excited over the matter and used such poor judgment as to practically disinherit the daughter, where their aversion to the son-in-law and their fear and belief as to his inheriting the property if the daughter did not secure a divorce before her death have a reasonable basis in the facts.

2. SAME—*non-expert witnesses cannot give opinion as to sanity of testator without stating facts.* Non-expert witnesses cannot give their opinion that a testator was not of sound mind and memory unless they state such facts or circumstances as may induce a reasonable belief in the unsoundness of mind of the testator.

3. PLEADINGS—*what question is presented by a motion to direct verdict in will contest case.* A motion to direct a verdict for the defendants in a will contest case presents the question whether there is any evidence, considered in its most favorable aspect, aided by all reasonable inferences which may be drawn therefrom, fairly tending to prove the issues, and if there is no such evidence the court should allow the motion.

APPEAL from the Circuit Court of Macoupin county; the Hon. NORMAN L. JONES, Judge, presiding.

EDWARD C. KNOTTS, and THOMAS RINAKER, for appellants.

C. F. MORTIMER, D. LOGAN GIFFIN, and JESSE PEEBLES, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

Dela Hettick, the appellee, (now Dela Hettick Close,) filed her bill in the circuit court of Macoupin county to set aside the joint and several will of her parents. Sarah J. Hettick, the mother, died March 1, 1910, seized of 145 acres of land near Scottville, in Macoupin county. James M. Hettick, the father, died September 18, 1911, possessed of approximately $30,000 in personal property and seized of about 600 acres of farm lands in Macoupin county and two vacant lots in Scottville. On September 24, 1909, James M. and Sarah J. Hettick executed their joint and several will, whereby they devised to appellee, their only child and only heir-at-law, the farm owned by Sarah J. Hettick and the two vacant lots in Scottville owned by James M. Hettick for and during the period of her natural life and at her death to the heirs of her body in fee simple, and in case she died without heirs of her body, then to the trustees of schools of the township of Scottville, in Macoupin county, to be held by said trustees for the use and benefit of the schools of that township forever, provided that the land should not be sold but only the rents, issues and profits should be used for the support and benefit of said schools. All the remainder of their property was devised and bequeathed directly to the trustees of schools of the township of Scottville under the same conditions as the contingent devise to them of the farm owned by Sarah J. Hettick and the vacant lots in Scottville. The bill charged lack of tes-

tamentary capacity in the testators and that the will was procured through the undue influence of Sarah J. Hettick. The jury returned a verdict finding that the writing produced was not the will of James M. Hettick and Sarah J. Hettick, and a decree was entered in conformity therewith.

At the conclusion of the evidence on behalf of contestant, and again at the close of all the evidence, proponents asked for a peremptory instruction directing the jury to find the issues for the proponents. The court withdrew from the consideration of the jury the question of undue influence but refused to direct a verdict upon the question of lack of testamentary capacity. This action of the court is assigned as error.

Nine witnesses testified on behalf of contestant. The testimony thus produced tended to prove that the testators and appellee lived upon the farm owned by Sarah J. Hettick; that the relations between the testators and appellee were always friendly and that testators had a deep affection for her and exhibited the love and tender care which parents usually have for their children; that the parents were frugal and good managers and had accumulated their fortune by hard work, thrift and careful dealing; that appellee was also frugal and thrifty, and assisted her parents in every way possible in work about the home and in conserving and increasing their fortune. On September 16, 1909, appellee, at that time being twenty-six years of age, was married at St. Louis, Missouri, to Dr. Charles Waters, who was then attending a medical school in St. Louis. Mr. and Mrs. Hettick were both much opposed to the marriage of their daughter to Dr. Waters for some time prior to the marriage and talked with some of their friends relative to the matter. In these conversations they both seemed to be much excited, particularly Mrs. Hettick. Prior to the time of the marriage they became reconciled and ceased to oppose it. On September 20, 1909, appellee returned to her home from St. Louis, informed her parents that she had

been informed that her husband had sustained improper relations with a woman in St. Louis prior to her marriage, and when she had confronted him with this information he had admitted it, stating that he would resume the relations at any time if he saw fit to do so; that she had left him and would never live with him again or have anything further to do with him. This caused both Mr. and Mrs. Hettick to become very much troubled and distressed, and they expressed the fear that Dr. Waters would become possessed of some part or all of their property through appellee or because of his relationship to her. By appointment made by Mr. Hettick the testators went to the office of James B. Searcy, an attorney at Palmyra, on September 24, 1909, and procured him to draft the instrument in question. Searcy testifies that Mrs. Hettick took the lead in giving the directions for the drafting of the will and did most of the talking; that the excitement during the time they were in his office was intense; that they stated their belief that Dr. Waters would secure their property if their daughter should come into possession of it and gave him the directions as to how they desired the will to be drawn. He drew the will just as they directed him. They further stated to him that should appellee secure a divorce from Dr. Waters, or when she secured a divorce, they desired to execute a codicil to the will giving all their property to appellee. The fee paid to Searcy included the pay for the drafting of the codicil which was to be prepared and executed when appellee secured her divorce. Mr. Hettick employed attorneys at that time to represent his daughter in securing a divorce. No divorce was attempted to be secured by appellee during the lifetime of the testators, but after their death, and after the expiration of two years from the time she left her husband in St. Louis, she filed a bill and secured a divorce upon the ground of desertion. After the daughter returned home from St. Louis, and after the will was made, both of the testators seemed to be troubled and distressed during the

remainder of their lives and in this respect were changed from what they had formerly been.

No witness on behalf of contestant testified to any act or conversation by either of the testators which was out of the ordinary or would indicate mental unsoundness. It is the contention of appellee that her parents were victims of an insane delusion in respect to Dr. Waters, in that they believed he had some design upon their estate and would attempt by some means to secure possession of their estate should it descend to her, and in support of this contention it is pointed out that Dr. Waters never gave any indication that he had any such design; that appellee had left him and had assured her parents that she never intended to live with him again or have anything to do with him. There is nothing in the testimony of any of the witnesses on the part of contestant to indicate that either of the testators was of unsound mind or suffering from any insane delusion. It might well be argued that they used poor judgment as to the best means to accomplish the end they sought to attain, as it was shown that they had repeatedly expressed their intention that appellee should receive their entire estate when they died. Appellee had married Dr. Waters. At the time this will was made he was her husband. So far as this record discloses she had no grounds at that time for securing a divorce. The acts of which appellee disapproved were committed prior to the marriage. The testators no doubt appreciated that should they die and leave all their estate to appellee, and should she in turn die without securing a divorce from Dr. Waters, he would have a substantial interest in her estate which could not be defeated. It could hardly be said to be an insane delusion if the testators entertained the belief that their daughter might become reconciled to this man whom they disapproved of, and that she might voluntarily turn over to him a considerable portion, if not all, of any estate she would inherit from them. It was no delusion on the part of the testators

that their daughter had married this man. It was no delusion on their part to believe that as her husband, should she become possessed of their estate and die prior to securing a divorce, he would have a substantial interest in the property, and it cannot be said that they were suffering from a delusion because they desired to prevent Dr. Waters ever securing any portion of their estate through a reconciliation with their daughter. The testators may have used poor judgment in practically disinheriting their daughter in order to deprive Dr. Waters of an opportunity to secure any portion of their property, but they cannot be said to have been suffering from such an insane delusion as to render them incapable of making a testamentary disposition of their property merely because they did not adopt some scheme whereby the daughter would have the beneficial use of all their property and at the same time her husband would be prevented from ever obtaining any part of such property.

Five of the witnesses who testified on behalf of contestant were permitted to express their opinion, over the objection of proponents, that the testators were not of sound mind and memory. As to one of these witnesses the court allowed a motion excluding her testimony on this subject. These were all non-expert witnesses. None of them had stated facts or circumstances which could induce a reasonable belief of the unsoundness of mind of the testators, and such opinion was therefore inadmissible. *Brainard* v. *Brainard,* 259 Ill. 613; *Walker* v. *Struthers,* 273 id. 387; *Lloyd* v. *Rush,* 273 id. 489.

The motion to direct a verdict presented the question whether there was any evidence, considered in its most favorable aspect, aided by all reasonable inferences which might be drawn therefrom, fairly tending to prove the issues. (*Lloyd* v. *Rush, supra.*) No evidence was offered on the part of contestant which fairly tended to prove the issues. Eighteen witnesses testified on behalf of proponents

that the testators were both of sound mind and fully competent to transact all the ordinary business affairs of life. The court erred in not giving the peremptory instruction.

The judgment of the circuit court is reversed and the cause is remanded.     *Reversed and remanded.*