(No. 11927.—Decree affirmed.)

Mary A. McCune *et al.* Plaintiffs in Error, *vs.* Raymond A. Reynolds *et al.* Defendants in Error.

*Opinion filed April 15, 1919—Rehearing denied June 4, 1919.*

1. Trial.—*on motion to instruct for defendant the evidence is to be taken most strongly in favor of plaintiff.* A motion to instruct the jury to find for the defendant is in the nature of a demurrer to the evidence, and the testimony so demurred to, together with all reasonable inferences arising therefrom, must be taken most strongly in favor of the plaintiff.

2. Wills—*what is undue influence.* Undue influence is any improper or wrongful constraint, machination or urgency of persuasion whereby the will of a person is overpowered and he is induced to do something he would not do if left to act freely.

3. Same—*burden is on the contestant to prove charge of undue influence—fiduciary relation.* The burden rests upon the contestant to prove the charge of undue influence, and the mere fact that beneficiaries in a will stand in a fiduciary relation to the testator does not put upon them the burden of showing an absence of fraud and undue influence, where there is no evidence tending to show that they were instrumental in procuring the execution of the will.

4. Same—*what question is presented on motion to withdraw issue from jury.* In a will contest case, on a motion to withdraw the issue of undue influence from the jury, the question presented is whether there is any evidence fairly tending to prove that issue.

5. Same—*admissions of one devisee as to acts of undue influence not admissible where devisees have separate interests.* In a will contest case, statements or admissions made by a devisee con-

cerning the testamentary capacity of the testator or acts of undue influence in procuring the execution of a will, while admissible in evidence where the interest of all the devisees is joint, are not admissible where the interests of the devisees are separate.

6. Same—*when interests of devisees are not joint.* The interests of devisees under a will are not joint unless joint tenancy, and not tenancy in common, is expressly declared, and the act abolishing joint tenancies applies to personalty as well as to realty.

7. Same—*when error in holding court at home of a witness is harmless.* Courts have no authority to exercise their functions in any place except that provided by law, but in a will contest case, where the only issues raised are those of testamentary capacity and undue influence, error in holding court at the home of one of the attesting witnesses who was unable to attend the hearing is harmless, where there is in the record abundant evidence, aside from that of said attesting witness, to sustain the finding of the jury.

8. Same—*when attesting witness need not be called in suit to contest will.* On the contest of a will by bill in chancery, when the execution and probate of the will are admitted by the bill and the only issue is the soundness of mind of the testator, it is not essential that the subscribing witnesses shall be called to prove either the due execution of the will or the testamentary capacity of the testator.

9. Same—*when testimony as to contents of former will is not admissible.* In a will contest case, testimony regarding the contents of a former will is not admissible where the terms of such will are variant from the will in suit.

Writ of Error to the Circuit Court of Whiteside county; the Hon. Frank D. Ramsay, Judge, presiding.

George F. Ort, (R. W. E. Mitchell, and Frank W. Joslyn, of counsel,) for plaintiffs in error.

Stager & Stager, and McCalmont & Ramsay, for defendants in error.

Mr. Justice Stone delivered the opinion of the court:

This cause comes on a writ of error to the circuit court of Whiteside county to reverse the decree of that court dismissing the bill filed by Mary A. McCune, one of the plaintiffs in error, to set aside the will of Chauncey W. Reynolds,

deceased. The bill as amended charges undue influence on the part of the testator's three sons and want of testamentary capacity on the part of the testator, and makes Walter D. Reynolds, Raymond A. Reynolds and Chauncey W. Reynolds, Jr., his sons, and Gertrude Morley and Beatrice O. Morley, grand-daughters, defendants. Mary A. McCune is a daughter of the deceased. The will was executed in 1902 and devises the real estate in part to the three sons and the balance to the executors to pay legacies to the grandchildren and gives the residue of his property to his sons. The eighth clause of the will provides as follows: "Having already advanced and deeded to my daughter, Mary A. McCune, property that is now of greater value than that herein willed to either of my said sons, it is my will that she receive nothing whatever from my estate." The case was heard before a jury. At the close of the contestants' testimony the chancellor, on motion of proponents, withdrew from the jury the issue of undue influence on the ground that the contestants' evidence did not tend to support such allegations of the bill and instructed the jury accordingly. The only remaining controverted question to go to the jury was that of the testamentary capacity of the testator. The jury returned a verdict sustaining the will.

The questions involved in this cause arise on the assignments of error on the part of the chancellor in withdrawing the issue of undue influence from the jury, error in receiving and rejecting testimony, the granting and refusal of certain instructions, and that the verdict of the jury was against the manifest weight of the evidence.

A motion to instruct the jury to find for the defendant is in the nature of a demurrer to the evidence, and the rule is that the testimony so demurred to, together with all reasonable inferences arising therefrom, must be taken most strongly in favor of the plaintiff. (*Geiger* v. *Geiger*, 247 Ill. 629; *Lloyd* v. *Rush*, 273 id. 489.) Undue influence has been defined to be "any improper or wrongful con-

straint, machination or urgency of persuasion whereby the
will of a person is overpowered and he is induced to do
or forbear an act which he would not do or would do if
left to act freely." (*Smith* v. *Henline,* 174 Ill. 184.) The
burden rests upon contestant to prove the charge of undue
influence. This cannot be done by the establishment, alone,
of a fiduciary relation existing·between the testator and the
beneficiaries. The mere fact that beneficiaries in a will may
stand in a fiduciary relation to the testator does not put
upon them the burden of showing an absence of fraud and·
undue influence, where there was no evidence tending to
show that they were in any way instrumental in procuring
the execution of the will. (*Lloyd* v. *Rush, supra; Bau-
chens* v. *Davis,* 229 Ill. 557.) "Undue influence that will
avoid a will must be directly connected with the execution
of the instrument and be operating when the will is made.
(*Wickes* v. *Walden,* 228 Ill. 56.) It must be influence spe-
cially directed toward procuring the will in favor of par-
ticular parties, and be such as to destroy the freedom of the
testator's will and render the instrument obviously more the
offspring of the will of others than of his own." (*Snell* v.
*Weldon,* 239 Ill. 279; *Lloyd* v. *Rush, supra; Bowles* v.
*Bryan,* 254 Ill. 148.) The question presented on a motion
to withdraw an issue from the jury, as in this case, is
whether there is any evidence fairly tending to prove the
issues involved. *Yess* v. *Yess,* 255 Ill. 414.

The evidence of the contestants shows that the testator
made his home with one of his sons, Raymond, after the
death of his wife, which occurred prior to 1900. He had
a room up-stairs, which he had himself furnished. Adin
McCune, a son of Mary A. McCune, testified to visits paid
by him to the testator at the home of the son, Raymond;
that the testator would close the door to his room while the
witness was there; that he complained that since his wife
died "the place did not seem like home;" that Raymond
and his wife acted as though they didn't want him there;

that witness had seen acts of disrespect, which he describes as indicating that the testator lived in fear of his children; that testator frequently cried when talking to him of family affairs, especially when talking of his deceased wife. Witness does not give the dates of these conversations or visits, though it appears from his testimony that a part of the incidents testified to occurred during the year in which the will was made.

Richard A. Morley, husband of a deceased daughter of testator, testified to various conversations with the testator and with Raymond. The evidence of conversations with said son was objected to on the ground that the statement of one heir could not bind the rest of the heirs. On statement of counsel for contestants that it would be shown that the other two sons made substantially the same statement and were cognizant of the statement made by Raymond, the court permitted the evidence to go in, with the ruling that it would be stricken if not connected up. Morley, on the same statement of counsel and ruling of the court, testified that on one occasion shortly after the death of the testator's wife, Raymond asked witness to request his (witness') wife to urge the testator to move in with him (Raymond); that it would not do to have complainant move in with testator, and he asked that a conference be arranged with the testator to that end. Witness also testified to a conversation at this conference between Raymond and the testator in which the former urged his father to make his home with him, saying complainant had too many children and that if he moved in with her it would end in trouble. Witness testified to a conversation with Raymond the following day in which he said: "It is to our interest to keep Minn [complainant] out of there; with Walt on the farm and Minn in the house here there won't be anything left for the rest of us." Witness also testified to conversations with the sons Raymond and Walter, in which they declared that their sister had received all that she was entitled to,

and more, too, from her father, and that Walter told his father so. Witness also testifies to a conversation with Raymond in August, 1902, about a month before the making of the will in question, when the latter was complaining about complainant having received her mother's watch, in which conversation he said: "She is welcome to it, but I will see to it that it is the last thing,—the last article of mother's,—she ever gets from him, and she will never get another dollar of our father's estate." Witness also testified that the testator appeared nervous when discussing his family affairs and at times showed fear of his sons and at times an unfriendly attitude toward them. On withdrawing the issue of undue influence from the jury the chancellor, on motion of proponents, struck from the record this testimony on the ground that there was no evidence connecting the other sons with such statements or the purpose evidenced thereby, as counsel for the contestants had stated would be done, and on the further ground the statements of one are not admissible as binding on the others without being so connected up. This ruling is assigned as error.

There is no charge that said sons conspired with one another to use the undue means charged by the bill to have been used by each of them. The rule is that statements or admissions made by a devisee concerning the testamentary capacity of the testator or acts of undue influence in procuring the execution of a will, while admissible in evidence where the interests of all the devisees are joint, are not admissible where the interests of the devisees are separate. *McMillan* v. *McDill,* 110 Ill. 47; *Campbell* v. *Campbell,* 138 id. 612; *Boyle* v: *Boyle,* 158 id. 228; *Dowie* v. *Driscoll,* 203 id. 480.

In the case of *McMillan* v. *McDill, supra,* cited in the later cases on the subject, the testator devised his property in equal shares to certain persons. In the bill to contest the will all devisees were made parties defendant, and on the hearing contestants were allowed, over objections of the

defendants, to prove declarations of different ones of the devisees to the effect that the testator did not have mental capacity to make a will. The court, however, ruled that the declarations of each devisee were admissible against him but not against the co-defendants. In that case this court said: "In the case under consideration, the court, in deciding the question, admitted the declarations only as against the party who made them. But this did not relieve the evidence of its injurious effect. The evidence was admitted upon the issue involved in the case. It was incompetent as against the other defendants, and as it could not affect the issue without affecting the other defendants, it was, in our judgment, incompetent to go to the jury on the issue involved. If the interest of the devisees had been joint the evidence might have been admitted against all of them, as we understand it to be a rule of evidence where the parties have a joint interest in the matter in suit an admission made by one is in general competent evidence against all. But here the devisees did not have a joint interest under the will but they had separate interests in one subject,—the validity of the will,—as held in *Dietrich* v. *Dietrich,* 1 Pen. & Watts, 306. If this was a case where a judgment could be rendered against one of the defendants without affecting the rights of the others there might be some ground for admitting in evidence the declarations as against the defendant who made them. But such is not the case. The only question here is as to the validity of the will, and testimony which defeats one defendant—one devisee—defeats all, and a judgment against one necessarily defeats all. While it might be proper to defeat a will on the admissions of a party who was a sole devisee, it would be manifestly unjust, where there are several devisees, to suffer the rights of all to be concluded and swept away by the admissions of one, and these admissions made in their absence and without their knowledge or sanction. If the admissions here could have gone to the jury and affected the rights of

none but the one making them no error would have been committed. But such was not the case. The admissions, notwithstanding the ruling of the court, went to the issue *devisavit vel non,* in which all the devisees were equally interested."

In the case of *Campbell* v. *Campbell, supra,* certain witnesses testified to statements made by devisees as to what they had done to influence the testator in making his will. This court there said: "In no view could the evidence of the declarations of Campbell be received against anyone but himself, since the interests of appellees are in common and not joint; but to admit the evidence upon the issue in this case for any purpose would affect the interests of all claiming under the will, and we have therefore held in an analogous case it is not admissible at all."

Joint tenancies have been abolished in this State since the act of 1821, entitled "An act concerning partitions and joint rights and obligations." This act as it is preserved in the present law applies to personalty as well as to realty, (*Hay* v. *Bennett,* 153 Ill. 271,) except where joint tenancy and not tenancy in common is expressly declared in the conveyance of real estate, as provided in section 5 of the Conveyance act. (*Mette* v. *Feltgen,* 148 Ill. 357.) The interests of the devisees under this will were not joint, and the testimony of the statements referred to was properly stricken from the record. There was no evidence fairly tending to prove the issue of undue influence, and the chancellor did not err in withdrawing the same from the consideration of the jury.

The record contains much testimony on the issue of the testamentary capacity of the testator. Contestants offered the testimony of eight witnesses on the issue of testamentary capacity. George James, Charles Detra and Robert S. James testified that they were for years neighbors of the testator; that at times he was sociable and at times would pass them on the road without speaking and apparently

without seeing them. None of them testified that in their judgment he was not mentally capable of making a will. L. J. Lively, a traveling salesman, testified, in effect, that he lived near the testator; that he spent most of his time away from home; that at times testator would speak to him and at times he would not; that he had had no lengthy conversations with him; that he had observed his appearance in a casual manner; that he considered the testator hardly a normal man. This witness gave no other opinion touching the testamentary capacity of the deceased. Jane Lane, another neighbor, testified that she had known the testator since he moved into Morrison, about 1895; that she did not see him very often; that she sometimes saw him sitting on the porch or leaving the house; that he seldom talked to anyone. This witness gave as her opinion that he was weak in mind and body but did not testify further as to an opinion of his testamentary capacity. Richard A. Morley, son-in-law of the testator, testified to frequent visits and conversations with him and that in his judgment he was not capable of making a will. On cross-examination he admitted that he felt an interest on behalf of the complainant and that he assisted her in securing counsel in the case. Adin McCune testified as before set out and that in his opinion the testator was not mentally capable of making a will. The testimony of Cora McCune, wife of Adin McCune, was to the same effect.

The proponents offered the testimony of thirty-nine witnesses, including men and women from many avocations of life, who had known the testator for periods varying from ten years to the life of the witness and some for the life of the testator. Most of them had seen him frequently and many of them testified to conversations or business transactions with him. All of these witnesses testified in legal effect, and many of them in terms, that in their opinion the testator was of sound mind and memory at the date of the execution of his will.

We have examined the evidence in this case and are of the opinion that the chancellor was justified in finding that the testator was of sound and disposing mind and memory when the will was executed. It appears from the evidence that he was eighty-one years of age at the time of his death, which occurred in 1916. In his more vigorous years he was a stern and at times a taciturn man. He was a successful farmer and accumulated considerable property. After retiring from his farm he continued to personally attend to the renting of it and to transact his various affairs and business. This continued to be true up to the time of his last illness. While there is evidence in the record that during the latter years of his life his memory was at times poor, that he was at times nervous and appeared melancholy after the death of his wife, yet the overwhelming weight of the testimony supports the finding on the issue of testamentary capacity.

The contestants also assign as error the removal of the court to the home of the witness Woodford during the trial for the purpose of taking the testimony of said witness, he being ill and unable to attend the hearing. It is insisted that such a proceeding is *coram non judice* and void, and that as Woodford was one of the subscribing witnesses to the will his testimony was essential to the proponents' *prima facie* case as to its validity, and that since the testimony of Woodford and the proceedings in taking the same were void, the record contains the testimony of but one subscribing witness to the will. It appears from the record this testimony was so taken by the express agreement of counsel as shown by a stipulation in the record, it being stipulated that no advantage would be sought by or objection raised to such proceeding. While courts have no authority to exercise their functions in any place except that provided by law, (*People* v. *McWeeney,* 259 Ill. 161,) yet in this case there was no objection to the validity of the will nor its introduction in evidence on the ground of want of proper

execution or lack of proof thereof, nor was such an issue raised on the pleadings. This is not a proceeding to probate a will but to set aside a will probated. On the contest of a will by bill in chancery when the execution and probate of the will are admitted by the bill and the only issue is the soundness of mind of the testator, it is not essential that the subscribing witnesses should be called to prove either the due execution of the will or the testamentary capacity of the testator. (*Graybeal* v. *Gardner,* 146 Ill. 337.) Here the bill of the contestants admits the execution of the will and its admission to probate. The only issues raised were those of testamentary capacity and undue influence. The testimony of Woodford was not essential to make a *prima facie* case. There was in the record abundant evidence, aside from that of Woodford, to sustain the finding of the jury. It follows that the error complained of was a harmless one.

Various errors are assigned as to the ruling of the chancellor on the admissibility of evidence, the main contention being that the court erred in refusing testimony offered by contestants of the contents of a former will of the testator. From the statements of counsel in connection with the offer of said testimony it is apparent that the terms of said will were variant from the will here in question. Testimony regarding the contents of a former will is not admissible where the terms of such will are variant from the will in suit. (*Roe* v. *Taylor,* 45 Ill. 485; *Pilstrand* v. *Swedish M. E. Church,* 275 id. 46.) The chancellor did not err in refusing this testimony.

Error is also assigned as to the rulings of the chancellor in the giving and refusing of certain instructions. We have examined said instructions together with all instructions given and are of the opinion that the jury were fully and fairly instructed.

There being no reversible error in the record the decree of the circuit court will be affirmed.        *Decree affirmed.*