LOUIS P. BAUCHENS *et al.*

*v.*

LILLIE D. DAVIS *et al.*

*Opinion filed October 23, 1907.*

1. WILLS—*what is not evidence of an insane delusion.* Proof that a testator believed that his children had not treated him well, that they sided with his wife in the matter of the estrangement between them, and that he complained that his son had never re-paid anything on a certain loan is not evidence of an insane delusion, where there is no evidence to show that such beliefs and complaint were not well founded.

2. SAME—*what is necessary to require devisee to show fairness of transaction.* In order that a devisee standing in a confidential relation to the testator shall be required to prove that the devise was free from undue influence or fraud, it must be shown that the devisee was in some way connected with the making of the will.

3. SAME—*when evidence of undue influence properly excluded.* Evidence offered for the purpose of showing undue influence by a devisee is properly excluded where there is nothing therein to show that the devisee suggested the making of the will or did anything to bring about its execution.

APPEAL from the City Court of East St. Louis; the Hon. B. R. BURROUGHS, Judge, presiding.

On July 6, 1905, appellants, who are heirs-at-law of Adam Bauchens, deceased, filed their bill in the city court of East St. Louis against Mrs. Lillie D. Davis and Ralph Duncan, administrator, appellees, to set aside an instrument which had been admitted to probate in the county court of St. Clair county as the last will and testament of the deceased. Lillie D. Davis was one of the devisees under said will and Duncan had been appointed administrator with the will annexed. The bill averred, among other things, that at the time of the execution of said will the said Adam Bauchens was not of sound mind and memory, and that he had been prompted to make the said will by the misrepresentations and undue influence of said Lillie D. Davis.

Adam Bauchens died March 23, 1905, aged sixty-nine years, leaving an estate of the value of about $10,000, as estimated by appellants. For a number of years prior to his decease he had been a resident of the city of East St. Louis. He was during his business life a close, economical, industrious and strong-willed man. He was divorced from his wife in 1903, and at the time the will was executed, and for some time prior thereto, he did not have a very friendly feeling toward his children. From December, 1902, until about August, 1904, Bauchens boarded with the family of a man by the name of Newton, who lived in one of his houses on Collinsville avenue. He then went to board with the defendant Mrs. Davis and her husband, who occupied another house on the same street. About a month later he purchased a piece of property on Minnie avenue for $1700 and moved with the Davis family into that house, and on December 10, following, having concluded that the house in which they were living was not suitable for him, as it was not built with proper regard to excluding the cold and was without a furnace, he purchased another residence property on Eighth street for $4500, where the house was better built and heated by a furnace, and from that time until a few days before his death, when he was removed to St. Mary's Hospital, he occupied that property with the Davis family, which consisted of Mr. and Mrs. Davis, Mr. Murray, who was a brother of the wife, a young man by the name of Reynolds, who boarded there, and a woman employed to assist in housework.

The will was executed on December 19, 1904, and in and by the second clause of said will he devised to Lillie D. Davis the last mentioned residence property, free and clear of all encumbrances, reciting that said devise "is made in recognition of services rendered and to be rendered to me by her and her family during declining years of my life, I having made my home with them and who are taking care of me." After making certain other minor bequests, the

residue of his property was bequeathed to the appellants, his children, and Pearl Adolph, a grand-daughter, in equal parts, except that his daughter Annie was given but five dollars and his son Adam was charged with a sum of money which, according to the recitals of the will, the father had loaned him.

The will was executed without the knowledge of Mrs. Davis. The attorney who drew the will testified that Bauchens consulted him at least ten times concerning it before it was finally prepared. About the time the instrument was executed Bauchens stated to a number of persons that it was his intention to make the Eighth street property his permanent home, and if Mrs. Davis would take care of him he was going to will it to her; that he had a room there to himself and went in and out when he pleased; that he had the comforts of a home, a nice bed and a comfortable room and that his meals were cooked to his liking; that she would do more for him than any of his own family. At all times he expressed the highest regard for her. He often talked to persons of the manner in which his family treated him, complaining that they had forsaken him and taken sides with his wife; that when they came to see him they always wanted money, and on several occasions he stated that he did not want to leave anything more to them than he could help; that he was going "to spend it himself and get the good of it." Shortly after the will was executed, while in conversation with one of the witnesses, the deceased stated (referring to the devise in his will to Mrs. Davis) : "I met one of my sons and they throwed it up to me and said, 'When you are dead we will show you who gets that property; we will see whether Mrs. Davis gets it.'" During the last year of Bauchen's life he was afflicted with a loathsome disease and his health failed rapidly.

Defendant Davis answered the bill, denying that Adam Bauchens, at the time of the execution of the will, was not of sound mind and memory, and denying that she induced

him to execute the said will by misrepresentation or undue influence.

Upon a trial the jury returned a verdict finding that the writing in question was not the last will and testament of Adam Bauchens, deceased. Upon motion of proponents a new trial was granted. On the second trial the court, upon motion of Lillie D. Davis, withdrew from the consideration of the jury evidence offered by appellants upon the question of undue influence, and a verdict was returned finding that said instrument was the last will and testament of Adam Bauchens, deceased. After overruling a motion for a new trial a decree was entered in accordance with the verdict. From that decree contestants appeal, and contend, first, the court erred in passing on instructions; second, the court erred in withdrawing from the consideration of the jury all evidence offered in support of the allegation of undue influence.

DANIEL McGLYNN, and E. W. EGGMANN, for appellants.

WISE & McNULTY, and KEEFE & SULLIVAN, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

It it not contended by appellants that the verdict of the jury was so manifestly against the preponderance of the evidence as to warrant a reversal. It is urged, however, that there was evidence which tended to show that the deceased entertained an insane delusion in regard to his children, and that the court improperly refused instruction No. 14 asked by appellants, which was designed to inform the jury that if they believed, from the evidence, that Adam Bauchens entertained such a delusion, the jury might take that fact into consideration, with the other evidence, in determining whether the writing offered was his will.

"An insane delusion is a belief in something impossible in the nature of things or impossible under the circumstances surrounding the afflicted individual, and which refuses to yield either to evidence or reason." (*Scott* v. *Scott,* 212 Ill. 597.) There is no evidence in this record which tends to show that the deceased had any such delusion in regard to his children. His affection for them was not as warm as the affection which a father ordinarily entertains for his children. He explained this by stating that at the time of the difficulties between himself and wife the children sympathized with and aided the wife, and he was more incensed by his daughter Annie than by either of his other children, for the reason, as he said, that she had been more active in the wife's behalf than the others. He also complained that his son Adam refused to re-pay a sum of money which he had loaned him. There is no evidence whatever that the belief which he entertained in regard to these matters was not well founded. The fact that his regard for his children was thereby lessened is no indication that he entertained an insane delusion. By the will he left but five dollars to the daughter Annie, and charged the son Adam with the money which he said had been loaned to him, and the will was in those respects entirely consistent with his sentiments regarding those two children as he had theretofore expressed them. There was in the record nothing upon which to base the instruction now under consideration.

It is also urged that the court should not have excluded the evidence which was offered for the purpose of showing undue influence, and appellants seek to support this assignment of error by language quoted from *Sands* v. *Sands,* 112 Ill. 225, and repeated with approval in *Dorsey* v. *Wolcott,* 173 id. 539, as follows: "Where a person enfeebled in mind by disease or old age is so placed as to be likely to be subjected to the influence of another and makes a voluntary disposition of property in favor of that person, the courts require proof of the fact that the donor understood the na-

ture of the act and that it was not done through the influ-
ence of the donee." In each of those cases the person who
would profit by the instrument attacked was largely instru-
mental in securing its execution, and that fact must be con-
sidered in determining the meaning which attaches to the
language quoted. In the case at bar Mrs. Davis knew noth-
ing of the preparation of the will until after it had been
signed and attested. So far as appears from the excluded
evidence she did not suggest the making of the will and did
nothing to bring about its execution. In *In re will of Barry,*
219 Ill. 391, the distinction above pointed out was recog-
nized in these words: "In cases in which the burden of
proof is thrown upon one standing in a confidential relation-
ship to show the absence of fraud or undue influence in the
making of a will, such person must be shown to have been
directly connected in some manner with the making of the
will." We think there was no error in excluding the evi-
dence in question.

What has already been said disposes of other objections
raised to the action of the court in passing on instructions.

The decree of the city court will be affirmed.

*Decree affirmed.*