(No. 18983.—

JOHN PRINZ *et al.* Appellees, *vs.* JOHANN P. SCHMIDT *et al.* Appellants.

*Opinion filed April 20, 1929.*

CLARENCE S. PIGGOTT, and CLAUDE J. DALENBERG, for appellants.

COBURN, KEARNEY & COBURN, and C. L. CASSIDAY, for appellees.

· Mr. COMMISSIONER PARTLOW reported this opinion:

John Prinz, Eliza Urban and Eva Smeberg filed their bill in the circuit court of Cook county to contest the will of Phillippine Schmidt on the ground of mental incapacity

and undue influence. Upon issue being joined the cause was heard by a jury, and at the close of the evidence the court instructed the jury that the question to be determined was whether the testatrix was induced to execute the will as the result of the undue influence of Johann Phillipp Schmidt. The jury returned a verdict finding that the instrument was not the last will and testament of the testatrix. A decree was entered in accordance with the verdict, and an appeal has been prosecuted to this court by Johann P. Schmidt and Maria E. Schmidt.

Appellants insist that at the close of all of the evidence the court should have directed a verdict in their favor, and after the verdict should have granted a new trial. These two alleged errors depend upon the weight to be given to the evidence.

The evidence shows that the testatrix died in Chicago on March 27, 1925, at the age of seventy-three years. Her father was married twice and she was the only surviving child of the first marriage. There were five children by the second marriage: Johann P. and Maria E. Schmidt, who are the appellants herein; Mary Prinz, who died before the testatrix, leaving her husband, William Prinz, and her children, John Prinz, Lizzie Urban and Eva Smeberg, the last three being the parties who filed this bill; Peter Schmidt, who died before the testatrix, leaving a widow, Mary Schmidt, and his children, George Schmidt, Conrad Schmidt and Lizzie King; and Henry Schmidt, who died unmarried before the testatrix. The testatrix had one daughter, Lizzie, who married Bernard Schomberg. The daughter died without issue before the death of her mother. The will was executed March 10, 1919. It gave to Johann P. Schmidt one piece of real estate and to Maria E. Schmidt another piece of real estate, together with certain personal property. This was all of the real estate owned by the testatrix. The will gave one dollar to each of the other heirs above named. The remainder of the estate was

divided equally between appellants, and Johann P. Schmidt was appointed executor.

The testatrix was born in Germany, where she learned to be a masseuse. She lived in Chicago for twenty years before her death. When she arrived in Chicago her half-brothers, Johann P. and Henry Schmidt, who were unmarried, ran a meat market at No. 40 West 115th street. They lived with their mother over the meat market. The testatrix lived with them for some time, and in their home she followed her occupation. She made money, which she deposited in a savings bank, and later she bought first mortgages on real estate, which she kept in a strong box in her home. As her business prospered she bought a house several blocks from the home of her family, where she resided alone until April, 1917. In the fall of 1916 her half-sister, Mary Prinz, and the latter's husband, William Prinz, who lived on a farm near Wausau, Wisconsin, went to Chicago and stayed with the testatrix until the next spring. Prinz testified that just before he returned to Wisconsin the testatrix told him she was getting too old to stay alone, and she asked him if he would like to take care of her. He replied that he could not leave the farm but if she was willing to go to the farm he would keep her. About three weeks after Prinz returned to his home the testatrix suddenly, without notice to her relatives, in company with Eva Weigert, who was a sister of Prinz, went to the Prinz farm in Wisconsin. Over the objection of appellants evidence was admitted as to declarations of the testatrix made at this time which showed that she was in fear of Schmidt because of a threatened prosecution by him against her for practicing medicine without a license. The witnesses testified that the testatrix told them that she had sold medicine and was charged with the death of a child; that the child had died a long time prior and she was in no way to blame; that Schmidt knew about this occurrence and had threatened to prosecute her for violations of the law;

that he threatened to have her sent to Kankakee as insane or confined in the county jail, and that she was under his dominion and control. Three witnesses, William Prinz, Eva Weigert and Mary Mudroch, testified to these conversations, none of whom had any personal knowledge of the death of the child or of any threats made by Schmidt except what the testatrix told them. Eva Weigert testified that one morning in April, 1917, about eight o'clock, the testatrix came to her house in Chicago. She was nervous and afraid and told the witness not to let anybody in the house that day, and when anybody came to the door she would hide. She begged the witness to take her to her sister Mary, in Wisconsin. She said Schmidt was going to have her arrested and he had two men watching her house. The witness consented to accompany the testatrix to Wisconsin, and she testified that on the trip the testatrix was nervous, and every time the train stopped and a man came in she said it was somebody to get her.

The evidence on behalf of appellees further shows that when the testatrix and Mrs. Weigert arrived at the Prinz farm they told the family the purpose of their visit, and the testatrix asked Prinz to help her out, and he said he would. The next morning they drove to Wausau and saw Fred Genrich, who was Prinz's lawyer. They asked him to prepare a contract whereby the testatrix was to transfer all her property to Prinz and he was to support her the rest of her life. The lawyer refused to prepare the papers until he knew the reason for their execution, and thereupon the testatrix told him of the incident of the death of the child. The contract was drawn and executed by her, together with a power of attorney authorizing Prinz to act for the testatrix and take possession of her property, both real and personal. An order was signed by her directing Schmidt to deliver to Prinz all deeds, abstracts, notes and mortgages belonging to her. These papers were executed on April 27, 1917, and about one week later the testatrix

conveyed her real estate in Chicago to Prinz. As soon as Schmidt learned that the testatrix had disappeared he caused a telegram to be sent to Prinz asking if she was at his house. He also sent a telegram to Conrad Laut, a friend who lived at Rothschild, Wisconsin, three miles from the Prinz farm. Prinz replied that he would be in Chicago the next morning. He and his wife went to Chicago and exhibited to Schmidt the papers executed by the testatrix and made a demand for all of the documents belonging to her. Schmidt said he did not have the papers. Prinz telegraphed to his home and received an answer stating that they were in a drawer in the Schmidt house. Schmidt found the papers and delivered them to Prinz, who delivered them to his lawyer and got a receipt for them. Prinz and his wife stayed in Chicago about a week. They testified they removed the furniture in the house of the testatrix to the up-stairs, cleaned the house, destroyed all medicine in the house, made arrangements to rent the house, and then returned to their home, accompanied by Maria E. Schmidt. Two or three weeks later Schmidt went to Wisconsin. The testatrix and her sister, Maria, returned to Chicago with him, and the testatrix lived at the Schmidt home for about a year and a half thereafter.

On June 6, 1917, Schmidt filed a petition in the probate court of Cook county, the testatrix was adjudged to be a distracted person incapable of managing her estate, and the Pullman Trust and Savings Bank was appointed as her conservator. The bank filed its petition in the United States district court of Wisconsin against Prinz to recover the papers delivered to him under his written authority from the testatrix. On January 23, 1918, a decree was entered by consent, which ordered Prinz to turn over to the conservator all these securities, of the value of about $18,000, retaining $475, which he was allowed for expenses. On May 18, 1918, the property of the testatrix was restored to her by the verdict of a jury in the probate court of

Cook county. Shortly thereafter she requested her former conservator to prepare her will, and she was referred to a lawyer of the bank. The will was prepared and executed. It was substantially identical with the will in question in this case, except that it contained no bequests of one dollar to each of the heirs.

In March, 1919, while the testatrix was living at the Schmidt home, Fred P. Jacobitz was called to make a new will for her. Jacobitz testified that he had known the testatrix for about nine years and had made many of her investments for her and looked after some of her affairs. At the time the new will was discussed only Jacobitz and the testatrix were present. According to his testimony she told him she had some trouble with Prinz and knew he would contest the will unless she left him some property, and for that reason she wanted to leave him and his children one dollar each, otherwise she desired to make the will the same as the first one. He testified that she told him on several occasions that it was Prinz who had threatened her with trouble and had induced her to go to Wisconsin; that after she went there he had her sign everything over to him because he said they would come after her and would get her, and that she transferred her property to him because she was scared into so doing. Jacobitz prepared the new will at his office and a few days later went to her home and had it signed. He testified that he read the instrument to her in the presence of Schmidt, who protested, saying that he had property and she should dispose of her property so that all of the heirs would get something out of it. She replied that other people had been fighting her all the time and he was entitled to it, with Maria. The testatrix lived with her brother about a year and a half after her Wisconsin trip and then moved to her former home, where she lived with Maria until her death. She kept her new will in her strong box at home.

At the beginning of the trial evidence was offered as to the conversations with the testatrix on the occasion of the visit to Wisconsin, which was almost two years before the will in question was executed. Objections were made by appellants to this evidence on the ground that the declarations were not made at the time of the execution of the will and were not admissible. The objections were overruled, and this ruling is assigned as error. Declarations of the testatrix are not admissible to show that the will was executed under duress or undue influence or to show fraud, but such declarations may be admitted where they tend to show her mental condition at the time of the execution of the will, or so near the time that the same state of affairs must have existed. (*Norton* v. *Clark*, 253 Ill. 557; *Waters* v. *Waters*, 222 id. 26; *Compher* v. *Browning*, 219 id. 429; *England* v. *Fawbush*, 204 id. 384; *Hill* v. *Bahrns*, 158 id. 314; *Bevelot* v. *Lestrade*, 153 id. 625.) It is admitted by appellants that these declarations were competent on the question of the mental incapacity of the testatrix. At the time the testimony was admitted that issue was before the jury. When the question of mental incapacity was taken from the jury no motion was made by appellants to strike that evidence from the record nor was any instruction tendered covering the question, so appellants are in no position to complain of the admission of this evidence.

Even if it be conceded that all of the evidence was properly admitted, it fails to establish the charge of undue influence sufficiently to justify setting aside the will. Three witnesses testified to the statements made by the testatrix relative to the threats made by her brother. William Prinz was the father of the three complainants and Eva Weigert was the sister of Prinz, therefore both of them were indirectly interested in the result of the suit. Mary Mudroch was the only witness who testified to these threats who apparently was not related to the testatrix and would not

benefit by having the will set aside. Mary Schmidt, the fourth witness who testified for appellees, was a sister-in-law of the testatrix. Her husband had been dead for over twenty years, and if the will were set aside her children would benefit by such action. She did not testify to any threats. She testified that the testatrix talked to her about her brother every time they met, and said she would leave a part of her estate to the children of the witness but Schmidt would not let her, and that she had to have his consent to everything she did. She testified that Schmidt did not like her but that he helped her when her boy was in trouble; that after the testatrix died Schmidt told the witness he was willing to do what was right by her, and that she was getting everything that was coming to her, and that he had made Maria make her will and leave the witness $2000. This was substantially all of the evidence on behalf of appellees to sustain the charge of undue influence.

Conrad Laut testified for appellants that he was a friend of Schmidt. When he received word from Schmidt relative to the whereabouts of the testatrix he went to the home of a daughter of Prinz and asked if the testatrix was there, and the daughter denied that she was there; that when he met the testatrix and her sister, Maria, shortly afterwards, the testatrix said, "Oh my God, Conrad! I have not got a cent any more! Prinz took all of my money!" She said: "If I knew where you lived I would run over to your house; I cannot stand it any more; he locked me up; he wants to put me in the crazy house." She said: "Phillipp is coming and I am going along with you." She said: "Prinz won't get nothing; they got enough."

Bernard Hintz, pastor of the Lutheran church at 113th and Edbrooke avenue, in Chicago, was called by appellants. He testified that the testatrix and appellants were members of his church and he had seen them in their family life once or twice every month and sometimes every week; that he had occasion to observe the relations between

the brother and sisters; that they were all on the best of terms; that he never heard a word between them at the various times he had been at their home; that he heard the testatrix, after her return from Wisconsin, say that she wanted her property to go to appellants; that he saw no evidence of fear so far as the relations of the testatrix and her brother were concerned; that she said that Phillipp was her best brother and her best friend; that she looked to him to help her, and she said that it was good to live next to him. This witness was disinterested, and in our opinion his testimony was entitled to more weight and credit on the vital issue than any other witness who testified. There is no evidence that either Laut or Jacobitz were related to any of the parties or were in any way interested in the disposition of the property.

The evidence also shows that Schmidt visited the testatrix frequently, took her meat from his market, supplied her with groceries, and looked after her affairs generally. Evidence was offered by Prinz to the effect that he obtained the property of the testatrix to hold temporarily and did not claim it as his own, but the fact remains that within twenty-four hours after the testatrix arrived at his house he. had $18,000 of her property, which he never returned to her conservator until he was ordered to so do by the United States district court.

Undue influence has been defined to be any improper or wrongful constraint, machination or urgency of persuasion whereby the will of a person is overpowered and he is induced to do or forbear an act which he would not do or would do if left to act freely. (*Smith* v. *Henline,* 174 Ill. 184.) The burden was upon the appellees to prove the charge of undue influence. This could not be done by the mere establishment of a fiduciary relation between the testatrix and the appellants. Even if the appellants did occupy a fiduciary relation to the testatrix, that fact did not cast upon them the burden of showing the absence of undue

influence, unless there was evidence tending to show that they were in some way instrumental in procuring the execution of the will. (*Lloyd* v. *Rush,* 273 Ill. 489; *Bauchens* v. *Davis,* 229 id. 557.) The undue influence which will avoid a will must be directly connected with the execution of the instrument and be operating when the will is made. (*Gregory* v. *Richey,* 307 Ill. 219; *Bowles* v. *Bryan,* 254 id. 148; *Waterman* v. *Hall,* 291 id. 304.) It must be influence directed towards procuring the will in favor of particular parties, and be such as destroys the freedom of the testator's will and renders the instrument obviously more the offspring of the will of others than his own. *Snell* v. *Weldon,* 239 Ill. 279; *McCune* v. *Reynolds,* 288 id. 188.

The only evidence of undue influence is the alleged threats of Schmidt, testified to by three witnesses on behalf of appellees and the testimony of Mary Schmidt. On the other hand, the evidence on behalf of appellants contradicts the evidence of these alleged threats and shows that the parties were friendly. Just after the conservator was discharged the testatrix made a will in which she disposed of her property substantially as it was disposed of in the will sought to be set aside. There was no evidence that at the time the first will was executed, appellants, or either of them, had anything to do with its execution or had any knowledge that it was executed. There is evidence that the testatrix was dissatisfied with this will for reasons already stated, and she had her brother send for Jacobitz to make a new will. There is no evidence that the appellants were present at the time the last will was discussed prior to the time it was drawn or that either of them dictated its provisions. When Jacobitz went to the home of the testatrix to have it executed the evidence shows that Schmidt protested as to the manner in which the testatrix had disposed of her property and urged her to give a share of it to each of the heirs. The second will was substantially like the first one. In our judgment the evidence fails to

establish that the will was executed as a result of the undue influence of appellants or either of them, and the verdict and decree were contrary to the evidence.

Complaint is made of certain instructions given on behalf of appellees, but it will not be necessary to consider them in detail. The first one was held to be erroneous by this court in *Dowdey* v. *Palmer*, 287 Ill. 42, and others might have been refused on the ground that they stated abstract propositions of law.

The decree will be reversed and the cause remanded.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded.*